KUSTOM SEATING v. KUSTOM SEATING KUSTOM SEATING v. KUSTOM SEATING KUSTOM SEATING v. KUSTOM SEATING This that I am holding in my hand is a test specimen prepared from one of those seat inserts pursuant to ASTM D903. It is obviously not a seat insert in itself but the ASTM D903 says you have to reduce a seat insert to a specimen like this before you can begin the test. I submit that a seat insert that has been cut up into pieces like this has already been vandalized. Furthermore I submit that the common sort of vandal that is of concern to persons of skill in the art is not equipped with kinds of band saws or power equipment necessary to slice through the fiberglass substrate of a seat insert to peel it in the same way that this thing has been peeled. Counsel there's evidence in the record that it took only seven pounds of force and then testimony that says seven pounds is very easy to pull for the accused infringing devices to be torn regardless of what the district courts claim construction is whether it should be 25 pound limitation whether it should be impossible to peel or very very very difficult to peel under any of those possible constructions isn't seven pounds still summary judgment of non- infringement? No because the only evidence in the record that says you can that seven pounds is easy to pull seven pounds of peel resistance is easy to pull is in the context of the specimen that has been prepared like this. This is not a seat insert and I would submit that if I can wrap my hand around the entire strip of fabric like this 25 pounds is not that hard to pull. The invention distinguished itself in the patent application from prior art seat that when you cut them would expose a cut edge that would enable a vandal to reach underneath the upholstery fabric get a good hard good firm grasp and pull. You have reduced the invention which is designed to avoid that problem to that exact situation when you prepare a test strip like this because now you can either with your hand or with a piece of test equipment reach underneath the fabric and pull on it. Furthermore I would submit that well when you do this this is a combination patent that includes as elements a vertical pile fabric and a bond that adheres that vertical pile directly to the substrate. Those three elements cooperate together to produce vandal resistance and when you do this to the seat insert you've eliminated the function or the that interaction and made the test simply one of the strength of the bond. What about the prosecution history where the remarks say with such strength that the upholstery cannot be peeled from the substrate and they that's on a 384 on a 385 they again say the fabric cannot be peeled away from the adhesive layer and then on a little further down 385 thus making peeling of the fabric next to possible. What do we do with those statements? First of all I think in the prosecution history there are a number of statements including restrained peeling I think the other statements made are ambiguous as to exactly how difficult the peeling has to be. Ambiguous cannot be peeled away from the other statements that say it restrains peeling but did the issue. Show me the other statements in this response that would cast doubt on the language that your client used because we have to construe the language is it a clear and unmistakable disclaimer and you're saying there's other language that would give people a different impression so show me where that other language is in this response. Well I can't do that off the top of my head. Well it's in your three-page response a 384 and 385. I misspoke it's a six five and a half page response so. A 388 your honor. Okay 388. If you go up the two above the last paragraph one two three four lines it refers to a high-strength adhesive that is sufficient to restrain peeling and what we're dealing with here your honor is not a comparison with prior art that had a lower strength of adhesive. So the question is what does it mean that is sufficient to restrain peeling the same page up above further the purpose of the present invention is to provide a vandal resistant coating that cannot be peeled from the substrate on the same page. It does say that yes it expresses the degree of peel resistance in different ways but what we're trying to overcome is objection based upon Shaman or which it which is an acoustic ceiling tile and it was not a question of how much strength resistance do you have to have in order to overcome the resistance based on Shaman. I agree with you that I didn't see anything in Shaman that would have required you to have said it can't be peeled under any circumstances in order to get over Shaman but doesn't our patent law say that for purposes of even if you didn't need to say as much as you did to get around the reference you're still bound by what you did say. I would say that certainly when you say something cannot be peeled there are circumstances when it can be peeled. That should not be read to mean unequivocally that under no circumstances is it possible to peel this. In fact when Dr. Hartzorn, our adhesives expert, performed the test that is described in the patent specification as slashing the fabric with a knife he was unable to peel the fabric from the substrate either with his fingertips. The district courts construction says that you're saying is flawed says it can't be manually peeled so didn't the district court recognize exactly what you're suggesting now which oh come on you can't say can't be peeled I mean under some circumstance it's incredible Holt sits down on the seat and he pulls you know it's gonna peel but the district courts it can't be manually peeled so doesn't that take into account sort of the the impossibility issue. I'm not sure it manually takes into account. I mean clearly what's contemplated here is a process that begins with the slashing of a knife and you're going to use ASTM D903 you're using a lot more than a razor blade you're using a bandsaw or something that cuts fiberglass but that limiting interpretation of resist I submit is just unwarranted because it goes against the common ordinary meaning of what resist means which is to provide a certain amount of opposing force but not necessarily one that is decisive and that is what is contemplated by the slash test where you don't use every possible maneuver or tool that could be brought to bear to vandalize the seat but you simply take a razor blade or sharp cutting tool and make a slash and so I think that our alternative claim construction which talks about a bond strength that is sufficient to deter or discourage a vandal better gets at the idea that perhaps there might be some amount of force that could be brought to bear to separate the fabric from the substrate but in the context of a vandal on a bus who's making a slash at fabric and then trying to pull on an exposed edge I think that in that context resist peeling is better embraced by the concept of how much strength how much bond strength is necessary to deter or discourage a vandal because that is what the object of the invention is how would you define the bond strength then of the particular cover how would I define it persons of skill in the art such as Keith McDowell and Julian Sandu who have performed this slash test which was simulated by Dr. Hartshorne a find that's that's a feasible test to perform a reasonable indication of peel resistance and Dr. Hartshorne testified that at that level of aggressiveness if you will the the application of force to lift that cut edge either with your fingertips or with even a pair of not manually but even that is going to not succeed in separating that fabric from the substrate I think the important thing about the difference between our claim construction and the one adopted by the district court is that Dr. Hartshorne then proceeded after performing the slash test to be more manual cuts to gouge and lever try to work his blade underneath the fabric and to essentially cut a flap you know a three-sided flap into the fabric and when he does all that then it comes up and that could be considered manual he's not using any power tools he's simply using the razor blade contemplated by the specification and it does come up in that fashion but well in order to do that he's gone far beyond the slashing procedure described in the specification of the patent and where we submit that anything that requires that amount of activity that amount of you know careful you know diligence and industriousness is going to be beyond the typical vandal in other words there may be vandals out there who are going to do that type of aggressive attack on the seat insert and they're going to vandalize the seat insert I submit that you can do that to the preferred embodiment like the American seating VR 50 if you work at it hard enough but I submit that a jury should be entitled to look at what dr. Hartshorn had to do in order to separate this fabric from this substrate and say well not that well it was possible it didn't prevent peeling the fabric from the substrate but that amount of effort that amount of resistance is sufficient to deter or discourage a vandal on a crosstown bus in a city let's hear from the other side and we'll save your rebuttal time your honor it's a Terry Lynn for custom seating I'd like to address the questions that you posed to my opposing counsel here it easy to peel and that's qualified by their outside expert and their inside inventor easy to peel would not be any standard that's been proposed by either side in this case it cannot be resistant to peeling if it's easy to peel well but when we talked about easy to peel they said something that required only seven pounds of force right they didn't say their expert didn't testify customs product would be easy to peel that's correct he did not specifically applied in that regard however the seven pounds were tested by their in-house American seedings testing lab and found to be seven pounds and the question to the test lab supervisor well that's seven pounds is that easy to peel and he said yes I understand mr. Dickinson's argument it's that that the type of test that was performed doesn't at all mirror what is disclosed in the patent you can't create a flap and then say you know how hard is it to peel because one of the major advantages of the invention is that it prevents you from creating a flap so you know that the test isn't an adequate means for determining the amount of force required to peel in the inventive product that's a different aspect of the invention and the patent does in fact address the fact that this bond strength the value of the specifically if you look at the bottom of column to the patent that's a 37 that bottom paragraph starts out at line 51 and in the first sentence addresses what the invention is and it says when an attempt is made to vandalize the seating of the present invention by slashing and it talks about the invisibility of the cuts and is not peelable or separable from the substrate it proceeds from that statement of the invention itself to discussion of the vertical pile fabric and how that conceals the cut that's another feature aspect but that's not what's being disputed here and then it talks about the amount of glue or adhesive that's being applied and that that level of saturation prevents it from being fraying it's that deals with the permeation aspects in some of the claims and then finally the last sentence it says further the strength of the adhesive now we're talking about the bond strength the strength of the adhesive is so great that even if there were bits of the backing material or pile that could be gripped so it's talking about once the vandals got a hold of it the fabric itself will tear before the backing will separate this discussion and there's different claim elements that are addressed to different features and functions this ASTM standard was not used by the court to say ASTM standard equates to infringement no this is an industry recognized universally applied and the patent recognizes this to be the test to use to determine how strong is the bond now that's only one part of the process and the judge and the court below understood that and said okay you've got seven pounds we've measured it it's not you know what does that tell you and that's where we move on to the American seating outside expert in the house people who say well seven pounds is easy to peel and they themselves in their briefing concede that and they use the word peel that would they concede that if it is easy to peel it would not meet the standard or the meet the patent what the spin that's happening here on this appeal is that now we're talking about peel is we're stepping away from the actual appealing this is getting it started and that well there's going to be some difficulty there well that's not what's contemplated by patent it's not what was being argued into the prosecution and it's not what was being presented previously it's it's this new get it started standard but the patent itself talks about the peel strength and the degree of bond being a factor determination by getting a hold of it and peeling it back the the evidence of record includes the inventor mr. McDowell at a 310 and the appendix talks about how a vandal will use or it's a you can pry up for the knife they're using the knife to cut they get it started grab it and then it can be readily peeled then dr. Hartshorn their expert same thing at a nine five four talks about the use of a knife to get it started you get a hold of it and away you go and that's the kind of thing that the patent I don't come to is specifically addressing the slash test is not a peel test it may be something that people look at or vis-a-vis vandalism you can vandalize something with lipstick cigarettes knives you know anything vandalism is not just cutting and peeling this patent is directed to a particular type of vandalism and that's where this slash test may address the fact that the there's concealing of the cut sure but then they don't say well now people tried to peel it and measure the degree no one has tested the peel resistance or peel strength of anything at least under this record other than by way of an ASTM standard period and that's what the court found can I turn you to the claim construction I want to finish this argument no no okay so with the claim construction do you think that claim one's requirement that the bond strength that is sufficient to resist peeling is broader or narrower than claim twos 25 pound per inch limitation claim to says the peel strength has to be at least 25 pounds so is claim one's sufficient to resist peeling broader or narrower than claim twos 25 pounds I think it's broader your honor broader yes and claim two is a narrowing dependent claim actually claim twos regardless yeah I apologize I believe at one point during the prosecution originally claim to was dependent but then they made it independent for allowability and anyway yes exactly but you so you do agree that it's broader than the 25 pound rule yes and if you look would a person be able to peel 25 pounds of force manually I don't believe so I mean there may be some people as you say the incredible Hulk but the normal young boys there you go your honor I 25 pounds was put in specifically for a reason by the patentee and if it's if it's not it says the the 25 pounds the typical person or normal person can't peel it yes there may be people out there that could do it but that's a good numerical bright line cutoff moreover claim to isn't just 25 pounds there's more to it than that they bring in the fabric strength as an another aspect to it it says the power the strength of the bond has got to be greater than the I believe it's the tear resistance of the the fabric or the 25 so now you're putting in a relative term and you're incorporating not just the bond strength but the strength of the fabric now that's tearing the fabric this way last time this case was on appeal judge Bryson wrote an opinion indicating that the 25 pound limitation could not be imported into claim one the claim one was much broader that's I agree I and we're not attempting to do that here but the district court says impossible to peel manually doesn't that make the definition of these terms under claim one actually narrower narrower under his construction than the 25 pound rule my concern is I think he violated law of the case I mean the federal circuit said you can't incorporate 25 pounds that term is broader and I think he adopted a construction which actually makes it narrower I I don't believe he intended to make it narrower he in fact referenced the fact that the claim one standard that he interposed and we agree with is that it provides some degree of latitude around the 25 maybe it's 22 maybe it's 21 the person cannot manually peel has some latitude around there whereas the 25 pounds or the strength of the fabric is a bright line delineation now I don't want to go too far off tangent on the law of the case because that was a non-precedential opinion however law the case yeah we yeah we're it was good for us we absolutely did not try to disagree or avoid it the the 25 pound limitation is not something that we're we or the court I believe interpreted or incorporated into the interpretation of claim one but I assume if I understand your argument right it is that even if the district courts construction is incorrect that regardless of which construction is adopted seven pounds ie easy to peel doesn't meet that construct absolutely your honor under their criteria under our criteria and in fact as they admit easy to peel cannot meet the criteria of this patent the only issue here is that they're now coming in with a spin that peeling doesn't really mean peeling it means well it's tough to get started once you get started then it's easy to at the time that in the USSC case and judge guitarist is much more intimately familiar with it probably than I but the determination was whether the 25 pound limitation came in but there was no argument or presentation saying okay what does it mean to peel or resist peel yes it was determined that it wasn't restricted to a specific numerical limit as you know this court is many times said you're not going to take a numerical limit and incorporated into a claim but what if we restructured the claim itself and said basically that what it means is a bond strength that exceeds the tensile strength of the well would it deal with this case yes because seven pounds is far less than bond strength of fabric would it be proper so I'd have to look at the claim construction I think you'd be incorporating something that now you've got a limitation and I'd have to look at the prosecution history to see if you could do that I don't want to shred to the tensile strength of the fabric well it's comparing the comparison of the bond strength adhesive to the tensile strength of the fabric so now you're putting a bright line limitation into the claim and absent something from the prosecution I guess I wouldn't necessarily go there could you do it I'd have to look at the file history to see if you could do that I think you might be incorporating a bright line but if you do what would be the proper claim construction proper claim if we eliminate the 25 pound limitation that the judge essentially incorporated it's a it's a bond strength that a person cannot normally peel it cannot manually peel I should say and that's what they said in claim one yes it's something that a person cannot manually peel and I to the extent you were going to modify to be under normal conditions I guess they didn't say not manually oh they said resist peeling that's right efficient to resist peeling sufficient to resist peeling and that goes back to what did they say in the patent what resist peeling means and the patent itself talks about that resists and pounds resists peeling not well rigorously but somewhat well 0.01 pounds would resist under that criteria to a certain degree as long as it doesn't fall off when you turn it over then it cannot I think the specification would that simply resisting to a level that it it's puts up some degree of pullback isn't going to be sufficient because the idea is to make it so a vandal when they cut it and they got a hold of it can't peel it off without either the glues too strong or if they can get enough force on it they tear the fabric one of the two well isn't that really the tensile strength of the fabric versus a bonding of the material to the hose or to whatever it see yes yeah that is so you're really playing with those two terms aren't you the bonding versus a conjunction but claim one specifically is dealing with the bonding the adhesive strength well Graham claim one says substrate with a bond strength that is sufficient to resist peeling of the fabric substrate right and in the and that's it I think that resists the definition doesn't go that far but if you put it in the I think your point is made by referring to the specification the specification of Trump's other things the definitions and dictionaries or whatever this is the dictionary that we're working from and the disclosure and the definitions ascribed as to the fact that it can't be peeled and we're talking about manually peeled under normal conditions even when you've got a hold of it that's the definition the prosecution history followed up and reinforced it and said it again and again the one reference that mr. Dickinson referred to where the the other language was used the restrain that at a page a 388 there they were specifically addressing this rejection on shaman and they were saying here in this in the claimed invention that's at a 338 you've got a high strength adhesive that restrains the removal and in shaman they don't have any adhesive at all it's molded in place it wasn't an effort to define the degree or how strong the bond was it was just saying here we use glue we use an adhesive shaman doesn't use that extent shaman does not limit the interpretation no that's right but I mean as as this court has pointed out many times Norian be striker which you're familiar with intimately is that if you make arguments during prosecution and you say that this is an aspect or the invention you can't go back and say well we want to back pedal away from that because we could have done it differently or we only needed to go so far otherwise there's no notice function that this patent provides to the public at large we know that yeah I'm sure we've exhausted your time mr. mr. Lynn thank you very much and my co-counsel tells me I might have missed flip the McDowell versus the Hartshorne the particular when I said which I want to come back to what's easy to peel but before I do that I want to start with judge Harris's question relating to the tensile strength of the fabric and the last sentence at the bottom of column two of the patent that this is a claim that was specifically stated in claim one of the subsequent five three nine pat which appears on a 45 of the appendix if you look at column six looks like lines 36 through 40 this is this is where that aspect of the bond strength is addressed that particular element is not in claim one this text doesn't help your argument does it I'm sorry this text you've referred us to doesn't help your position no you're talking about the bottom of claim to I mean bottom of column two yeah it does not what I'm saying is that that aspect of the invention is what was the subject of a subsequently issued patent five three nine claim one expressing this invention in different terms that relate directly to tensile strength of the fabric terms that do not appear in claim one okay so with respect to what's easy to pull at the risk of repetition the only evidence in the record that says that seven or eight pounds is easy to pull is in the context of a specimen with a loose flap that has been prepared for testing like in ASTM d903 ASTM d903 is not recited in patent or the when you get away from that when you start looking at the intact seat inserts the evidence in the record performs the slash test says it a 876 it's not a quick and easy matter to damage one of these seats that he's describing the degree of difficulty to get up a custom seating seat insert that presumably has a peel strength of around seven or eight pounds and let's get the Incredible Hulk out of here too I'm telling you if I can wrap my whole hand around this I can easily exert 25 pounds of pulling force on this thing and I don't think that I'm substantially stronger than kinds of people that vandalize buses in our urban set I also want to point out that with respect to the visibility of the cut that mr. Lynn alluded to dr. Hartzorn said when he was cross-examined about his slash test performed by himself he said it is a 716 you had to look carefully to see the slight trace in the fabric point being you don't see a cut edge when you run this blade over this type of a structure or what you see is like a combing of the vertical pile fibers which disappears if you just edge which obviously does not disappear well when you brush it with your hand and that is what makes it difficult for a vandal to figure out how to get underneath this thing and pull it and that is what the people of skill in the art equate peel resistance to as testified by two by Julian Sandu at a 812 and Keith McDowell at a 959 when they're asked how would you test this thing to determine its peel resistance they say both of them in essence I'd cut it and I'd pull it I think that's literally what Keith McDowell says Julian Sandu talks about when you cut it you can't pull the fabric off he is a person he's a customer who is with Chicago Transit Authority who is knowledgeable about what you need to do to provide peel resistance in the context of the problem of vandalism any more questions for mr. Dick okay thank you mr. Dickinson mr. land the case is taken into submission